UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Latoya Woodson,                            Case No. 17-24336

                 Debtor.                      Chapter 13

    Patrick S. Layng,

               Plaintiff,

v.                                                  Adv. No. 18-2183

    Davina Scott,

               Defendant.

**DECISION**

        A bankruptcy petition preparer tried to side-step a temporary bar order with a two-step. Specifically, during the four-month period she was prohibited from acting as a Chapter 7 petition preparer, Ms. Davina Scott continued to get referrals and ostensibly channel them to two close friends, whom she said she had trained as preparers. Those two friends, Ms. Latoya Woodson and Ms. Jade Fuller, failed to obey trial subpoenas. Ms. Woodson had testified in a related adversary proceeding about her inability to prepare her own bankruptcy schedules. In this case, a debtor-customer testified that Ms. Scott, the barred preparer, and not any trainee, performed her petition preparation work. Other debtor-customers described their contacts with Ms. Scott and visits to her home so they could get their petitions and schedules completed and paid preparation fees. After a review of the evidence and the applicable law, the Court will issue an order imposing fines and permanently barring the defendant from serving as a petition preparer in this District. This injunction includes any work overseeing, training or assisting others in the performance of such work.

## JURISDICTION

The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1334 and the order of reference. The Court has personal jurisdiction over the parties. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## PROCEDURAL HISTORY

The United States Trustee filed a complaint (1) seeking to compel compliance with a prior order of the Court requiring Ms. Davina Scott to pay a $650.00 fine and (2) asking that the Court impose additional fines for fraudulent, unfair or deceptive practices and that it permanently enjoin Ms. Scott, dba Renew Pro Se Services, from practicing as a bankruptcy petition preparer (BPP). The earlier order stemmed from another adversary proceeding, Adv. No. 17-2298, in the reopened bankruptcy case of Ms. Latoya Woodson.

In that earlier adversary proceeding, the Court found that Ms. Scott had accepted a fee for preparation of schedules that exceeded the reasonable value of the work, had negligently prepared Ms. Woodson's Chapter 13 schedules, had failed to disclose the fee paid, and had provided legal advice to falsify information in the preparation of those schedules. The January 24, 2018 order issued in that adversary proceeding permanently barred Ms. Scott from serving as a BPP in Chapter 13 cases and imposed a four-month bar from acting as a BPP in Chapter 7 cases. The order also required Ms. Scott to refund debtor Woodson her $75.00 fee, pay Woodson damages of $500, and pay the U.S. Trustee a fine of $650.00.

In the present complaint, the U.S. Trustee alleges that Ms. Scott continued to act as a BPP in Chapter 7 cases during the time she was barred (January 24, 2018 through May 23, 2018) and that while her friend, Ms. Jade Fuller or her cousin, Ms. Woodson, might have assisted clients introduced by Ms. Scott, no one informed the debtor-clients that Ms. Scott was temporarily barred from acting as a BPP. The complaint attached a list of 37 bankruptcy cases in this District wherein Ms. Woodson was listed as the BPP during Ms. Scott's four-month bar period. ECF Doc. No. 4. The complaint also attached a

list of seven cases in this District wherein Ms. Fuller was listed as the BPP during the same bar period. ECF Doc. No. 4-1.

Ms. Scott, *pro se*, filed an answer denying she committed any fraudulent, unfair or deceptive acts, but acknowledged she offered courses in bankruptcy petition preparation, courses which she said were purchased and taken by Ms. Woodson and Ms. Fuller. Ms. Scott denied that she continued to act as a BPP herself but admitted that she referred debtors to "acting BPP's who she trained through [her] educational course." ECF Doc. No. 5 at 2. Ms. Scott denied being present during appointments for schedule preparation held by either Ms. Woodson or Ms. Fuller. She also asserted she was experiencing "financial hardship and is unable to pay (the previously-ordered) fine." *Id.* Ms. Scott had filed her own Chapter 13 bankruptcy case in October, 2017, Case No. 17-30193, at which time she asserted she worked as a petition preparer with Renew Pro Se Services,[1] ECF Doc. No. 1, at 44.

The Court conducted a two-day trial on April 3, 2019 and June 27, 2019. Ms. Scott testified, as did four persons who had filed Chapter 7 petitions after being referred to Ms. Scott. After the second day of trial the Court took the matter under advisement.

## SUMMARY OF TESTIMONY

**Testimony of defendant, Davina Scott.** Ms. Scott testified she has been working for a home health care agency since September, 2017, part-time. She also receives child support. Her education level is about half-way to a college degree.

When asked about her compliance with the January 24, 2018 order to refund Ms. Woodson the $75 fee and to pay her $500 in damages, Ms. Scott

---

[1] Ms. Scott's 2017 bankruptcy case was dismissed on August 26, 2019 for non-payment. Case No. 17-30193, ECF Doc. No. 51. On September 4, 2019, Ms. Scott filed a new Chapter 13 case, Case No. 19-28599. In her new petition, she lists herself as sole proprietor of Renew Pro Se Services, ECF Doc. No. 1, at 4, but her Statement of Financial Affairs reports that the business ended in 2018. ECF Doc. No. 1, at 67. Her Schedule I reports income from two employers, Human Development Center and GT Independence, but her affidavit in support of her motion to continue the stay attests that she has three jobs. ECF Doc. No. 12, ¶ 3.

acknowledged that she has given Ms. Woodson over $700, "because they are family." She also stated that she continues to assist Ms. Woodson whenever she needs it. She admitted to not paying the $650 fine to the U.S. Trustee's office, which also was part of the Court's January 24, 2018 order.

Ms. Scott testified she has not acted as a BPP in Chapter 13 or Chapter 7 cases since the bar order was entered. She has offered training on how to prepare bankruptcy petitions and schedules to two other people aside from Ms. Woodson and Ms. Fuller, the latter whom she regarded "like a god-daughter," since the January 24 order was entered. Ms. Scott apparently sought to train others, as evidenced by a flyer introduced as Exhibit 6, "Are You Interested In Supplement Your Income By Learning How to Prepare Chapter 7 Bankruptcies?", but no one signed up for the course. That flyer was for a training course to be offered in September 2018, after the temporary bar period ended.

Ms. Scott would not identify the exact date she trained Ms. Woodson, explaining "it was not an actual course." Often when questioned about particular dates, Ms. Scott professed to suffer from "memory loss issues." She also said Ms. Fuller had helped her out for years, and that she had taught Ms. Fuller to type. Ms. Scott admitted printing up a list of bankruptcy preparer Do's and Don'ts and had a sample petition with segments whited out. She created a manual describing how to prepare a Chapter 7 petition. Ms. Scott testified that, in her understanding, the temporary bar order did not expressly prohibit her from training others to prepare bankruptcy petitions and schedules. She stated that if the order had included that express prohibition, she would not have done that training.

According to Ms. Scott, when Ms. Woodson and Ms. Fuller began preparing petitions, they did so at Ms. Scott's house, because they did not have printers and she provided the use of her printer. She cannot recall if she provided printer paper. Ms. Scott said she was present initially when Woodson or Fuller met with individuals, but not when they prepared the schedules. Ms. Scott testified that when a potential client came to her home, she would

introduce the client to Woodson or Fuller and tell the client that "this is who will be preparing your bankruptcy." If a potential client contacted her, according to Ms. Scott, she would tell him or her that she "was not preparing bankruptcies at this time," but referred them to either Woodson or Fuller, with a phone number. Then Scott would contact Woodson or Fuller and ask either if she was interested in helping that client. Scott claimed not to recall if she told the clients what paperwork to bring. If she didn't provide that information, Woodson or Fuller would have. She cannot recall how many clients would meet at a time.

Ms. Scott did not inform these clients that she was barred from preparing petitions. She testified that she "was not informed I had to say I was barred, just [that] I was not preparing bankruptcies at that time." If Woodson or Fuller had questions, Scott would refer them to the training manual she had prepared. She had taught them how to go on the court's website for free. Ms. Scott denied being aware of anyone other than Woodson or Fuller helping with the clients' paperwork. She denied observing Woodson or Fuller preparing schedules at her home. She denied handing out the completed petitions and schedules.

**Testimony of Latoya Woodson.** The U.S. Trustee subpoenaed Ms. Woodson to testify at both the April 3 and June 27 settings for this trial. She failed to appear. She testified in the prior, related adversary proceeding, Adv. No. 17-2298, which resulted in the four-month temporary bar against Ms. Scott. That trial was held on January 18, 2018, wherein Ms. Scott also testified. Significant for this proceeding, Ms. Woodson testified as to her own work and health background, and her need for her cousin, Ms. Scott, and a lawyer, to assist her with Woodson's own Chapter 13 bankruptcy filings.

Ms. Woodson testified that she had taken some courses but did not have a college degree, and that she left the workplace in 2015 due to disability. She had been a worker compensation adjuster for several different companies over the course of 11 years. During or before 2015, she began having seizures, sometimes five to six episodes per day.

Ms. Woodson testified that as of January, 2018, disability benefits were her sole source of income. Davina Scott helped her prepare her 2017 bankruptcy schedules over the phone. Those schedules showed Social Security disability benefits, family support payments and a caretaker supplement for her daughter as her monthly income components. Case No. 17-24336, ECF Doc. No. 1, at 39. Woodson had filed a prior bankruptcy case in 2016. No one helped her (at least at first) with the 2016 filing. Ms. Woodson didn't pull her credit report, but estimated expenses based on her bills. She came up with values for her personal property based on her knowledge of purchase prices. She acknowledged having student loans. In her words, her first plan "was messed up, wrong completely." She then retained a pro bono attorney to help her, and also asked her cousin Ms. Scott to help her. Ms. Woodson did not pay for Ms. Scott's help in the 2016 case. She said the lawyer "corrected everything." Woodson stated that completing her bankruptcy papers "was not her expertise." Her lawyer filed amended schedules and an amended plan, but the case was dismissed later for non-payment.

In 2017, Ms. Woodson told her cousin, Ms. Scott, that she needed to file bankruptcy again. She said Ms. Scott was aware of Woodson's health condition. Woodson provided the information for her schedules to Ms. Scott over the telephone. Ms. Scott had access to Woodson's prior filing made with the lawyer's assistance. Both filings were made very close together in time, and would have been very similar, according to Woodson, although she agreed that some aspects of her financial affairs changed between her 2016 and 2017 filings. For instance, there were changes in the values of certain assets. Woodson would have gone over those changes with Davina Scott, by phone. Woodson testified that Ms. Scott "is the professional and I'm not; she is a BPP. I'm going to respect her expertise." When asked why her student loans were not included in the 2017 petition and schedules with which Ms. Scott assisted, Woodson testified, "maybe she [Ms. Scott] did not feel they should be [listed]." Woodson also stated, "I didn't tell her not to list [the student loans]." Woodson added that she was working with Navient to try to get her student loans

forgiven due to her disability. Although Woodson testified at her Sec. 341 meeting of creditors that she paid Ms. Scott $75 in cash as a BPP fee, her disclosures reflect $0 in BPP compensation. In court, she testified to a history of loaning $400 to Ms. Scott, and treatment of the BPP fee as part of that loan repayment, but that arrangement is not reflected on the disclosures.

Ms. Woodson then described her current health situation, stating "I have bipolar disorder, anxiety disorder, PTSD." She testified that forgetfulness is part of her condition, and that she takes eight medications each day. She characterized herself as having "severe problems."

In her later Chapter 13 case, filed July 26, 2018 (after Ms. Scott's temporary bar), Ms. Woodson reports herself as "not employed," and "disabled" but she does report receiving $500 per month as a "Chapter 7 petition preparer." Case No. 18- 26382, ECF, Doc. No. 18, at 27, 31. After that case was dismissed, Ms. Woodson filed a second Chapter 13 case in 2018 with the help of counsel. There too she described herself as "disabled" but earning $500 per month as a Chapter 7 petition preparer. Case No. 18-28121, ECF Doc. No. 1, at 37-39.

**Testimony of Ms. Jade Fuller.** Although Ms. Fuller was subpoenaed to testify, the U.S. Trustee's counsel represented that Ms. Fuller phoned counsel on the morning of April 3 to say that she had given birth two days earlier and would not be able to appear on the subpoenaed date. The U.S. Trustee then subpoenaed Ms. Fuller for the second day of trial, June 27, 2019, but she failed to appear or otherwise respond. The Court can take judicial notice of the fact that in 2015, Ms. Fuller filed her own Chapter 7 case, No. 15-20706, wherein she disclosed Ms. Scott as the BPP. A $0 fee was disclosed.

Exhibit 2 to the complaint shows seven cases filed between February 20, 2018 and April 6, 2018 wherein Ms. Fuller is listed as the BPP. April 6, 2018 appears to be the last date Ms. Fuller performed this type of work in 2018.

**Testimony of Ms. Leanell Smith.** Ms. Smith testified on June 27, 2019.[2] She stated that in March of 2018 she determined she needed to file for bankruptcy, and a friend suggested she contact Davina Scott. She telephoned Ms. Scott, asked about the preparation fee, and what information was needed to help complete Smith's schedules. According to Ms. Smith, Ms. Scott advised that she was not a lawyer, described the information Smith needed to provide, and the fee Scott would charge. In early May, 2018, when Smith was able to gather funds for the fee, she again called Ms. Scott and asked where to drop off her paperwork. Smith texted and talked to Ms. Scott several more times on the phone. Smith brought her paperwork to a home in Whitefish Bay or Shorewood, as instructed. There were other people waiting in the living room to be called, and the kitchen area was closed off. Smith observed that everyone had paperwork, or a folder. She saw one person come out of the kitchen, and then one or two people go in. After 15-20 minutes a gentleman came out, reviewed her paperwork, and collected her fee. This gentleman told Ms. Smith that if she had any questions, she should contact Ms. Scott, and if Ms. Scott had questions she would do the same. Smith estimates there were 10-15 people in the home while she was there. She was not referred to anyone else, and believes it was Ms. Scott who prepared her bankruptcy paperwork. The gentleman collected paperwork from three or four people before Smith left. He was helping Ms. Scott. Smith thinks perhaps three people were seen by Ms. Scott in the kitchen while Smith was waiting.

The gentleman gave Ms. Smith a copy of the flyer marked as Exhibit 7, "Chapter 7 Bankruptcy – Thing You Would Need to Complete Before Coming to Pick Up Bankruptcy Petition" [*sic*]. The first item listed is to take one of the credit counseling courses listed on the flyer. The flyer describes Summit Financial as an online credit counseling agency, and states: "When they ask

---

[2] Ms. Scott appeared at the adjourned trial date via telephone, after she failed to appear in person and Court staff called her. She stated on the record that she had forgotten the trial date. She added that she had the flu. She understood she would not be able to elicit evidence over the phone and declined the opportunity to offer closing argument.

you for Attorney/Firm/Business Name, please add – Renew Pro Se Services – Search – Davina Scott – will appear or enter code #646334. Please click on that link so I will receive a copy of your credit counseling certificate." Smith testified that she followed those instructions.

A couple weeks later, Ms. Smith called or texted Ms. Scott to see if her paperwork was ready. Ms. Scott then contacted Smith to say she could pick up her papers. Smith went to the same area of town, but a different house. Ms. Scott gave her the bankruptcy papers and described next steps for filing. That was the only time Ms. Smith met with Ms. Scott. She did not see other persons there. Ms. Scott told Smith she would answer questions Smith might have. Smith does not know Latoya Woodson and has never spoken with her. She does not know why Woodson's signature appears on Smith's bankruptcy papers.

**Testimony of Derrick Russell.** Mr. Russell filed for bankruptcy in the Spring of 2018. He does not recall how he obtained Ms. Scott's information. He contacted Scott by texting her. He told her he and his wife needed their bankruptcy done. Ms. Scott told him what information he needed to bring to the first meeting. Ms. Scott told him to meet where to meet. He went to a house in Whitefish Bay where Ms. Scott had directed him. When he and his wife arrived, other people were present, likely more than three others. They met in the kitchen with a young lady named Jade. Jade helped him. Mr. Russell thinks he left paperwork with her in the kitchen. He had brought all the documents Ms. Scott asked him to bring to that first meeting. After that meeting, he was told to come back and pick up the bankruptcy paperwork, which he did about a week later at the same house. Mr. Russell took an online credit counseling course through Summit Financial. Case No. 18-23066, ECF Doc. No. 3. He paid a preparation fee of $60.00, because his paperwork wasn't ready on the day initially scheduled. Upon receiving the bankruptcy paperwork back from Ms. Fuller at that second meeting, Mr. Russell did not review it, but signed it at the courthouse.

**Testimony of Tito Browne.** Mr. Browne and his wife were referred to Ms. Scott for help with their bankruptcy by his wife's cousin. Mr. Browne's wife called Ms. Scott in March, 2018. Ms. Scott provided Ms. Woodson's phone number. Mr. Browne did not speak with Ms. Scott. Instead, he pulled together their paperwork after Ms. Woodson told him to go to certain websites. Mr. Browne met Ms. Woodson at a home in Whitefish Bay in mid-March. Mr. Browne spoke to Ms. Woodson once, when she told him the fee for preparation services. While he was at the Whitefish Bay home, also present were Ms. Woodson, and Ms. Scott for about two minutes. He also recalls another customer getting his or her bankruptcy paperwork done as well as another male and female in the living room. Ms. Woodson instructed him to sit at the kitchen table and made sure he had brought the required information with him. Mr. Browne and his wife both took the online credit counseling course through Summit Financial. Case No. 18-23057, ECF Doc. No. 4. Mr. Browne returned to pick up his completed bankruptcy paperwork at a different building or apartment complex about two weeks later. His wife phoned Ms. Scott one other time, but was unable to get through, and Ms. Woodson returned the call.

**Testimony of Saletha Blair.** Ms. Blair heard about Ms. Scott through word of mouth and learned that the bankruptcy preparation fee was $75. Ms. Blair texted Ms. Scott in March 2018. Ms. Scott told Ms. Blair that she didn't prepare bankruptcy petitions but gave her Ms. Woodson's phone number. It "took a while" for Woodson to respond, so Blair exchanged many text messages with Ms. Scott, and still didn't hear for some time. Ultimately Ms. Woodson, and not Ms. Scott, responded. Ms. Blair made an appointment on a Saturday to go to an apartment in Whitefish Bay to get started, bringing with her paperwork as Ms. Woodson had instructed. Upon her arrival, she saw a male, a female, and three other customers. She thinks it was Ms. Woodson who was helping the male and female in the apartment. Ms. Blair testified that she worked "with the guy," whose name she didn't learn, but saw Ms. Woodson talking to other people there. According to Ms. Blair, "The guy had me fill out

some paperwork. Some instructions sheet saying what things you'll need. He told me how to pay for the bankruptcy." The male who assisted her had some forms regarding the filing fee, explained the program, and had a checklist for paperwork. He sat next to Ms. Blair. According to Ms. Blair, "I didn't expect to meet with him, he came from upstairs, I told him why I was there, he started helping me. He was showing me what to do, he was filling out paperwork." Ms. Blair added that she had never seen Ms. Scott before. This man told Ms. Blair her paperwork would be prepared, and that she would get a phone call to pick it up.

Ms. Blair took an online credit counseling through Summit Financial. Case No. 18-24671, ECF Doc. No. 4. Ms. Woodson later called Blair to pick up her completed paperwork. For that second visit, Ms. Blair went to an apartment close to where she first saw Ms. Woodson and worked with the unidentified man. Ms. Woodson was present this time, and Ms. Blair paid the $75.00 fee. She said she was a given a receipt.

Ms. Blair doesn't know why there is no signature or date on Form 119, the bankruptcy petition preparer's notice filed with her schedules. Ms. Woodson filed Ms. Blair's petition and schedules and provided her with copies.

## LEGAL DISCUSSION

The U.S. Trustee asserts that Ms. Scott committed fraudulent, unfair and deceptive conduct by not advising prospective clients that she was barred from serving as a BPP between January 24 and May 23, 2018. 11 U.S.C. § 110(j)(2). Ms. Scott asserts that the bar order did not expressly require her to say as much, and that saying "she was not working as a BPP now" was sufficient.

While no one acting as a BPP may provide legal advice, and BPPs serve only as typists, 11 U.S.C. § 110(e)(2)(A), *In re Dunkle*, 272 B.R. 450, 455 (Bankr. W.D. Pa. 2002) (explaining that BPPs are only authorized to type information exactly as provided by potential debtors), *In re Bernales*, 345 B.R. 206, 225 (Bankr. C.D. Cal. 2006) (noting that BPPs are prohibited from, among other things, giving explanations or providing definitions of terms on

bankruptcy forms), it is the Court's experience that debtors rely on BPPs. They rely on persons acting as BPPs to help them complete the petition and schedules, a form-filling task which can appear daunting. This is why debtors are willing to pay someone $75 instead of trying to fill out the petitions on their own. Accordingly, the Court reasons that it would make a difference to debtors, and their reliance, if they knew Ms. Scott had been barred from acting as a BPP and had not voluntarily ceased that work. While only Ms. Blair testified that Ms. Scott expressly told her "I am not preparing bankruptcies at this time" when she referred her to Ms. Woodson, it is clear from her testimony that Ms. Scott was Blair's first, and remained her primary, point of contact during the petition-preparation process. In fact, Ms. Blair spent more time with the unidentified gentleman at Ms. Scott's home than she did with Ms. Woodson. It is also clear from Mr. Browne's testimony that Ms. Scott remained the primary point of contact for him and his wife. Ms. Scott should have advised that she was barred from working as a Chapter 7 BPP during that time period.

Moreover, it is plain from Ms. Smith's and Mr. Russell's testimony that Ms. Scott never told either of them "I am not preparing bankruptcies at this time," despite Scott's blanket testimony to that effect. The Court finds Smith and Russell more credible, and that Ms. Scott's failure to disclose the temporary bar while performing BPP work for Smith and Russell was fraudulent and deceptive.

The U.S. Trustee also asserts that recruiting Jade Fuller and Latoya Woodson to act as BPPs under her direction in order to continue her BPP business while she was barred, was fraudulent, unfair and deceptive conduct. Ms. Scott contends the bar order did not prohibit her from training others.

The Court does not find credible Ms. Scott's testimony that she trained Ms. Woodson or Ms. Fuller to act as BPPs. Ms. Scott would not give any dates for that training. Neither Woodson nor Fuller obeyed the U.S. Trustee subpoenas to testify on either day of trial, nor did Ms. Scott call them to testify

in her defense.[3]  The Court can take judicial notice of Exhibit 1 to the U.S. Trustee complaint, which is a summary of records on the Court's own docket. It reflects 37 cases filed between February 4, 2018 and May 24, 2018, which list Ms. Woodson as the BPP.  If taken as true, this would mean Woodson started work as a BPP almost immediately after the temporary bar order went into effect and less than a month after Woodson testified to having severe problems, including several types of mental health conditions and being on numerous medications.  If taken as true, it means Woodson worked as a BPP despite testifying with regard to her own case, that she had "messed up her plan completely," and that completing bankruptcy paperwork "was not her expertise."  Either Ms. Woodson did not really perform the work, despite being listed as the BPP in those cases, or Ms. Scott showed poor judgment in having her cousin work on cases referred to her.

     Exhibit 2 to the complaint reflects seven cases on the Court's docket listing Ms. Fuller as the BPP between February 20 and April 6, 2018.  If taken as true, this would mean Ms. Fuller started work as a BPP one month after Ms. Scott's temporary bar order went into effect, up until the time Ms. Fuller apparently delivered a child.  Other than Ms. Scott's statement that Ms. Fuller had been typing for her for a while, there is no real evidence of her training. Mr. Russell, the only witness to describe meeting with Ms. Fuller, only testified as to meeting her in the kitchen of the Whitefish Bay home and giving her the paperwork which Ms. Scott, not Ms. Fuller, had instructed him to provide.  He later retrieved the completed bankruptcy papers from Ms. Fuller, but never saw

---

[3] The U.S. Trustee did not ask the Court to draw a negative inference from Ms. Woodson's and Ms. Fuller's failure to obey their subpoenas.  Application of an adverse inference from a party's failure to supply evidence does not depend upon the existence of a subpoena compelling production of that evidence.  *Carroll v. Unicom AP Chemical Corp. (In re MGL Corp.)*, Case No. 00-10804DWS, 2001 WL 204729, at *3 and n.20 (Bankr. E.D. Pa. Feb. 5, 2001) (describing criteria, citations omitted).  And there can be a "missing witness" inference that testimony would be unfavorable to the party who had the power to call that witness, as in a family member, *see, e.g., U.S. v. Dahdah*, 864 F.2d 55, 60 (7th Cir. 1988), but a court need not draw adverse inferences when violations are clear and obvious.  *O'Connor v. Powell*, Case No. 99-C-6582, 2000 WL 782929 (N.D. Ill. June 15, 2000) (finding, without drawing adverse inferences, that violations of discovery order were willful since they were delayed and repeated).  Here, the violations are patent.

who actually did the work.  This is not evidence of any training Ms. Fuller might have received.  It is only more evidence of operations being directed by Ms. Scott.

The Court concludes it is more likely that Ms. Scott continued to prepare petitions and schedules during the bar period, and that Woodson's and Fuller's only roles were to sign the BPP disclosure forms.  And as Mr. Russell testified, sometimes the BPP disclosures, Form 119, were not even signed when filed.  The trial witnesses were told by Ms. Scott what financial information to supply, and they generally called Ms. Scott with any questions.  None of the witnesses was present as the individual BPP typed his or her petition and schedules.  This clearly was by design.

Davina Scott violated sec. 110(b)(1) by failing to put her name and address on the Smith, Russell, Blair and Browne petitions.  The Court reasonably infers that the same holds true for the cases listed in Exhibits 1 and 2 to the complaint, wherein Woodson and Fuller are listed as BPPs during the temporary bar period.  Scott violated sec. 110(c) by failing to provide her social security number in those cases.  By attempting to hide her connection to these cases by failing to identify her role, the Court finds her actions deceptive.  *See, e.g., In re Martin*, 424 B.R. 496, 509 (Bankr. D. N.M. 2010) (finding BPP's routine violations of at least five different provisions of Code warranted fines, disgorgement and permanent injunction).

Even if Latoya Woodson or Jade Fuller received some training in preparing bankruptcy petitions, Ms. Scott's direction of their work during the temporary bar period violated the temporary bar order.  There is no way to conclude from the evidence that either Woodson or Fuller operated independently.  All referrals came through Ms. Scott.  All debtors met at Scott's home.  Davina Scott made the introductions, and Woodson and Fuller prepared petitions at her home using her printer.  Ms. Scott's testimony is not credible that she would remove herself from her own home precisely when Woodson or Fuller prepared petitions, given their recent, if any, training and Woodson's self-professed serious limitations.  The number of people present in Scott's

home each time a debtor-witness appeared to bring his or her financial documents, and the other persons involved in the operation, including the unidentified gentleman, and the distribution of the flyer marked Exhibit 7, represent a flourishing operation of Renew Pro Se Services directed by Ms. Scott during the bar period.  As other courts have noted, "even acting as a passive conduit toward someone who does the actual typing, via ostensible 'referral' in the role of a 'resource center,' is enough to tie a participant into petition preparer status – where the intermediary receives payment and certainly where the channeling is directly to a single typist without the offer of a choice."  *Jonak v. McDermott*, 511 B.R. 586, 596 (D. Minn. 2014) (affirming bankruptcy court's determination that defendant and his operation violated section 110 by collecting unduly high fees and improperly providing legal advice); *In re McCrary*, Case No. 12-56446, 2013 WL 2947902, at *4 (Bankr. E.D. Mich. June 13, 2013) (considering factors to determine whether a person is acting as a BPP, including whether he or she acted as the point of contact or liaison between the debtor and the preparer, the extent to which he or she acted in concert with the preparer, and the extent of the preparer's control over the referring party (or vice versa), *i.e.*, whether there is an agency or employment relationship).

      The U.S. Trustee asserts that Ms. Scott has failed to comply with the Court's prior order by not paying the $650 fine to the U.S. Trustee's office.  11 U.S.C. § 110(j)(3).  Ms. Scott concedes she has not made the payment but contends she has not had the funds to do so.

      The Court does not find credible Ms. Scott's inability to pay the $650 fine to the U.S. Trustee in a timely manner, or at least within six months of the January 24, 2018 order.  Ms. Scott testified that she has given Ms. Woodson "at least $700" in the past year, above the dollar amount owed Woodson under the Court's order.  Somewhat defiantly, Ms. Scott would not agree she made those payments to comply with the Court's order (saying only, "because we're family").  That testimony about payment is not wholly credible, in part because Ms. Woodson failed to list any payments from Ms. Scott in the two bankruptcy

cases she filed in 2018, Case Nos. 18-26382 and 18-28121. Nonetheless, even if Ms. Scott has complied with that portion of the January 24, 2018 order requiring her to pay Ms. Woodson $75 in returned fee and $500 in penalty, it appears Ms. Scott has made a deliberate choice to resist complying with the order to pay the $650 fine to the U.S. Trustee. The Court will **GRANT** the U.S. Trustee's request to compel Ms. Scott to pay that pre-existing $650 fine no later than **November 30, 2019**, and the U.S. Trustee shall supply proof of that payment to the Court by that date.

The U.S. Trustee's primary allegation is that Ms. Scott failed to comply with the order temporarily barring her from acting as a Chapter 7 BPP. Ms. Scott denies that she herself prepared debtors' petitions and schedules during the four-month bar period, saying instead she trained two close friends or "relatives" to do so. Other courts have concluded that a person need not "place the date and numbers on the form" to avoid advising the court of their participation in the process of preparing documents for filing with the bankruptcy court. *See, e.g., McDermott v. Hills (In re Grissett)*, Case No. 07-4210, 2008 WL 4553083, at *2-3 (Bankr. E.D. Mich. Oct. 8, 2008) (finding that by specifically instructing debtors as to the information to be provided on the documents, respondents "prepared" debtor's documents and acted as "bankruptcy petition preparers" under sec. 110); *In re Springs*, 358 B.R. 236, 241 (Bankr. M.D.N.C. 2006) (finding defendant to meet the Code definition of BPP where debtor used defendant's computer to type and print petition and used defendant's instruction manual and computer software); *In re Thomas*, 315 B.R. 697, 70304 (Bankr. N.D. Ohio 2004) (explaining that 'preparation' goes beyond the physical typing or mere printing of documents, and finding that defendant violated consent judgment where, even though he did not physically complete bankruptcy petitions, he met with clients, provided use of his computer, answered questions and explained the bankruptcy process).

In light of all the testimony and exhibits received, the Court finds that Ms. Scott acted as a BPP in violation of the Court's order during the temporary bar period. The testimony of Ms. Smith and Mr. Russell are the most direct in

contradicting Ms. Scott's statements. They were credible witnesses. Ms. Smith testified that she exchanged a number of phone calls and text messages with Ms. Scott. Ms. Scott told her what information to collect, and where to bring her papers. At the Whitefish Bay home Ms. Smith spent some time talking with an unidentified gentleman who described at least part of the process to her. She witnessed what seemed to be a larger, organized operation for bankruptcy petition preparation. In fact, Ms. Smith complied with Exhibit 7, the flyer given her by the unidentified gentleman, and used the code for *Renew Pro Se Services – Davina Scott*, to obtain her credit counseling. Ms. Smith had a few additional phone calls with Ms. Scott. She never saw exactly who prepared her petition and schedules. Mr. Russell testified that Ms. Scott told him what information to collect, and where to bring that information. He saw a number of other people at the Whitefish Bay home, and although he did meet Jade Fuller, he never witnessed who actually prepared his petition and schedules.

While Mr. Browne (or his wife) and Ms. Blair had only telephone contact with Ms. Scott, they understood they were following her directions. They were told that Ms. Woodson completed their bankruptcy paperwork, but they never witnessed her doing so. Both Browne and Blair testified to a number of other persons being present at the Whitefish Bay home when they dropped off their financial information as instructed. Mr. Browne saw Ms. Scott "for two minutes." An unidentified gentleman assisted Blair at least with her filing fee paperwork. Their testimony, and the fact that they, like Mr. Russell, used Summit Financial for their online credit counseling as suggested by the flyer given to Ms. Smith, supports the conclusion that this was a continuing, larger, organized operation of Renew Pro Se Services, controlled by Ms. Scott.

Based on the violations above, the U.S. Trustee requests that the Court permanently bar Ms. Scott from acting as a bankruptcy petition preparer. 11 U.S.C. § 110(j)(1-3). Section 110(j)(2)(A) provides that if the Court finds that a BPP has engaged in any fraudulent, unfair or deceptive conduct and injunctive relief is appropriate to prevent its recurrence, the Court may enjoin the BPP

from engaging in such conduct.  The U.S. Trustee bases his request for a permanent injunction not only on Ms. Scott's acting as a BPP during the four-month bar period, but asserts that she collected fees during the period, and employed a scheme using Ms. Woodson and Ms. Fuller in a "shrewd and calculated" manner to circumvent the Court's order.  The U.S. Trustee asserts this scheme represents blatant defiance and disregard for the law and for the Court's authority.  Ms. Scott denies that she violated the letter of the Court's order.  Other courts have found that when a BPP demonstrates that he or she is incapable of respecting either the limits of the law or a prior court order, then to protect the public it may be necessary to invoke the Court's authority under secs. 105 and 110 of the Code to permanently enjoin that actor.  *See, e.g., In re Grissett*, 2008 WL 4553083, at *7.

      The Court's findings immediately above include the finding of such a scheme and warrant a permanent bar.  Whether Ms. Scott was the actual preparer, or assisted Woodson or Fuller or someone else in preparing petitions and schedules for any particular debtor, it is clear her active role did not cease during the temporary bar period.  *See In re Dunkle*, 272 B.R. at 456 (imposing permanent injunction against defendant from acting in concert or assisting persons in filing bankruptcy petitions).  The Court **GRANTS** the request to impose a permanent injunction against Ms. Scott serving in any manner as a bankruptcy petition preparer, including overseeing, training or assisting others in the performance of such work.

      The U.S. Trustee also seeks a fine of $5,325, pursuant to 11 U.S.C. § 110(l), for fraudulent, unfair and deceptive conduct.  That section provides that a bankruptcy petition preparer who fails to comply with a provision of subsection (b) through (h) may be fined not more than $500 for each such failure.  As described above, the Court has found Ms. Scott to have violated sections 110(b) and(c).

      The amount sought by the U.S. Trustee is less than the statutorily-allowed amount and is based on the 71 cases in which Ms. Woodson or Ms. Fuller are listed as BPPs on Exhibits 1 and 2 to the complaint.  The Court

**GRANTS** the request to impose a fine pursuant to sec. 110(l) but will not base the amount on all of the cases listed in Exhibit 1 to the complaint. That list of cases where Ms. Woodson is reported to have been the BPP, extends to cases filed *after* the temporary bar period expired on May 24, 2018. But the allegations of the complaint itself relate to violations of the January 24, 2018 order committed during the temporary bar period. Accordingly, there are 37 cases attributed to Ms. Woodson as BPP out of the total 71, during the bar period, as reflected on Exhibit 1. ECF Doc. No. 4. All seven cases attributed to Jade Fuller as BPP reflected on Exhibit 2, ECF Doc. No. 4-1, fall within the bar period. Adding 37 plus 7 equals 44 cases within the bar period. Multiplying 44 cases times the $75 fee collected equals $3,300.00. The Court reduces that amount by $15, to $3,285.00, given Mr. Russell's testimony that Ms. Fuller charged him only $60 because of a delay. Half of that amount, **$1,642.50**, is due within 90 days of this decision, or by **December 31, 2019**. The remaining half of that amount, **$1,642.50**, is due by **March 30, 2020**. The U.S. Trustee shall provide the Court with proof of each payment, on the date of payment.

    The Court directs the U.S. Trustee to submit an Order for Judgment consistent with this decision within 14 days.

Dated: September 30, 2019.

By the Court:

Beth E. Hanan
United States Bankruptcy Judge